# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 25-616V

| | |
|---|---|
| AMBERLEE VELASQUEZ,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Chief Special Master Corcoran<br><br>Filed: April 29, 2026 |

*John Robert Howie, Howie Law P.C., Dallas, TX, for Petitioner.*

*Irene Angelica Firippis, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT[1]

On April 9, 2025, Amberlee Velasquez filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") following her receipt of an influenza ("flu") vaccine on December 12, 2023. Petition, ECF No. 1 at Preamble. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). ECF No. 11.

---

[1] Because this unpublished opinion contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the opinion will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, I find that Petitioner more likely than not suffered the onset of shoulder pain within 48 hours after her vaccination, and that she has satisfied all other requirements for a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I.    Relevant Procedural History

The claim was assigned to SPU in May 2025. Three months later, in August 2025, Respondent requested suspension of the deadline for his Rule 4(c) Report (which would set forth his formal position regarding entitlement of the claim) to permit the parties to explore settlement. ECF No. 14. Rather than conveying a settlement demand, however, Petitioner filed a Motion for a Fact Ruling on Onset on November 19, 2025, ECF No. 18 ("Motion") (arguing that Respondent had informally questioned Petitioner's onset showing, but the evidence was "conclusive" in her favor, and formal resolution of this fact would properly move the case into formal *damages* phase). After briefly exploring litigative risk settlement, in December 2025 the parties reported an impasse and agreed to finish briefing entitlement. ECF No. 19-23.

Respondent filed a combined Rule 4(c) Report and Response on Feb. 9, 2026, ECF No. 24 ("Response") (recommending dismissal of the Table SIRVA claim on the grounds that Petitioner had not preponderantly established onset). Petitioner filed a Reply that same day, ECF No. 25. The matter is ripe for adjudication.

## II.    Authority

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). A petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed.

Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of a petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of certain covered vaccines. 42 C.F.R. § 100.3(a). The criteria establishing a SIRVA under the accompanying QAI are as follows:

Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g., tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

---

[3] In summary, a petitioner must establish the receipt of a vaccine covered by the Program, administered either in the United States and its territories – or in another geographical area but qualifying for a limited exception; that the injury or its residual effects lasted for more than six months, resulted in inpatient hospitalization and surgical intervention, or resulted in death; and the lack of a civil suit, award, or settlement for the injury. *See* Section 11(c)(1).

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

## III.   Findings of Fact and Conclusions of Law - Onset

I have reviewed all of the filings submitted by both parties to date, but now focus on the evidence most relevant to the solely disputed issue: the onset of Petitioner's left shoulder pain relative to vaccination.

- Petitioner was born in 1975. Shad no history of left shoulder pain or dysfunction, or any other medical conditions relevant to the present onset dispute. Response at 2; *see also e.g.*, Ex. 3 at 87-92 (primary care record three months pre-vaccination).

- Petitioner received the at-issue vaccine in her left deltoid, during a primary care encounter on December 12, 2023. Ex. 3 at 93-97.

- Twenty-nine (29) days later, on January 10, 2024, Petitioner returned to the primary care practice for initial evaluation of **"left shoulder pain… start[ing] after she received the influenza vaccination on December 12, 2023."** Ex. 3 at 101 (emphasis added). She denied any previous issues with immunizations, any injuries or other possible triggers for the pain, or any history of left shoulder problems. *Id.* The primary care nurse practitioner also assessed that Petitioner had **"left shoulder pain going on for about a month after she received the influenza vaccination,"** for which he offered naproxen, prednisone, and home exercises. *Id.* at 102 (emphasis added).

4

- On January 24, 2024, the primary care nurse practitioner memorialized in a record that Petitioner was still experiencing **"left shoulder pain going on for about 1.5 mo[nths] after she received the influenza vaccination,"** which warranted an MRI and an orthopedics consult. Ex. 3 at 106-07 (emphasis added).

- At a February 21, 2024 orthopedics initial evaluation, Petitioner reported "left shoulder pain… beg[inning] after she received a flu vaccine on 12/12/2023" with **"continued pain at the proximal lateral aspect of her arm in the area of the injection since that time."** Ex. 3 at 111 (emphasis added). The symptoms were **"relatively constant and worsened with increased use of the shoulder."** *Id.* (emphasis added). She again denied any trauma. *Id.* The orthopedist assessed **"left shoulder pain 10 weeks post receiving a flu vaccine at the left proximal lateral arm."** *Id.* (emphasis added).

- The March 7, 2024 MRI report's indication was **"pain in left shoulder since flu shot."** Ex. 4 at 12 (emphasis added). The radiologist reviewing the images commented: **"This all may be a result of the previous intramuscular shot. Depending on the timeframe since the injection, a[n] inflammatory or infectious process should be considered."** Ex. 4 at 12; Ex. 3 at 118 (emphasis added).

- At a March 11, 2024 follow-up, the orthopedist reiterated that Petitioner had **"[l]eft shoulder 13 weeks status post receiving a flu vaccine at the left proximal lateral arm…"** Ex. 3 at 118 (emphasis added). In light of Petitioner's **"persistent left shoulder pain after flu vaccination 12/12/23,"** she was referred to another orthopedics practice for further evaluation. *Id.* (emphasis added).

- On March 21, 2024, upon establishing care at the new orthopedics practice, Petitioner reported **"receiv[ing] her flu shot on December 12, 2023, [in] her upper deltoid and began noticing anterior lateral shoulder pain in the left shoulder ever since."** Ex. 8 at 14 (emphasis added). She again "denie[d] any specific trauma." *Id.* She received a steroid injection and was referred to formal physical therapy ("PT"). *Id.*

- At an April 3, 2024 initial PT evaluation, Petitioner reported that her left shoulder pain began on **"12/12/23… She received a flu shot [that day] and… through the day she had pain/soreness… [T]he pain has never really resolved and… is constant with intermittent spikes based on activity… [Petitioner] denie[d] any prior injuries to the left shoulder. [Petitioner] receives yearly flu shot and reports no prior issues…"** Ex. 9 at 3 (emphasis added). The physical therapist assessed **"signs and symptoms of SIRVA s/p the flu vaccine on 12/12/2023."** *Id.* at 4 (emphasis added).

- On April 24, 2024, a rheumatologist (treating Petitioner for unrelated issues) recorded her history of **"chronic left shoulder pain" after receiving a flu shot "too proximal in the arm**." Ex. 5 at 23 (emphasis added).

- A May 9, 2024 primary care record (again focused on other issues) noted that Petitioner was planning to undergo surgery to remedy **"left shoulder pain caused by a flu shot back in December"** and she had been **"dealing with this pain for quite some time."** Ex. 3 at 122 (emphasis added); *see also* Ex. 11 at 6-8 (June 19, 2024 arthroscopic surgery report – not specifically addressing onset).

- The records of post-surgical PT (dating from June 28 – October 25, 2024) continue to reflect the injury's initial onset as **"12/12/23 after receiving flu shot."** *See e.g.*, Ex. 12 at 5 (emphasis added).[4]

- In a declaration signed April 2, 2025, Petitioner stated that she had previously been in her "usual good state of health." Ex. 1 at ¶ 3. **"At the time the [December 12, 2023] vaccination was administered, she did not experience any unusual effects; however, within 34 hours of [her] vaccination, [she] experienced an aching pain and stiffness in [her] left shoulder… that felt like being hit with a sledgehammer."** *Id.* at ¶ 4 (emphasis added). The pain worsened over the following days – limiting her ROM, daily activities, and sleep. *Id*. Petitioner **"initially believed the pain [she] was experiencing was going to resolve on its own with time; however, as [her] pain persisted and was worsening, [she] decided to schedule an evaluation with [her] primary care"** which occurred just 29 days post-vaccination, on January 10, 2024. *Id.* at ¶¶ 4-5 (emphasis added).

Preponderant evidence supports the determination that Petitioner developed new left shoulder pain within 48 hours after her vaccination – consistent with the Table SIRVA element. As reflected above, Petitioner sought medical evaluation for a new left shoulder injury (which she believed was causally related to her December 12, 2023 vaccination) in less than a month after vaccination. That timing is consistent with Petitioner's explanation that she initially hoped that the injury would self-resolve, and that she waited for an appointment at her established primary care practice. Ex. 1 at ¶¶ 4-5; *see also* Motion at 5-6 (arguing that this initial treatment "delay" is not unreasonable, and has been accepted in past SIRVA cases) (internal citations omitted).

---

[4] The direct records of Petitioner's arthroscopic surgery on June 19, 2024 (Ex. 11 at 6-8), and her post-operative orthopedic follow-ups through December 30, 2024 (Ex. 13 at 11) do not address the left shoulder injury's onset.

Petitioner's histories began contemporaneously to the events at issue (and remained consistent over time), and they were intended to advance accurate medical diagnosis and treatment, and therefore "warrant consideration as trustworthy evidence." *Cucuras*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). There are no intervening medical encounters suggesting the *absence* of a shoulder injury shortly after vaccination. Motion at 6-8 (internal citations omitted).

Petitioner's pain was often described in terms that are temporally nonspecific, like "after," "since," "ever since," or "status post" (s/p) the vaccination. *See e.g.*, Ex. 3 at 101, 102, 106, 111, 118; Ex. 4 at 12; Ex. 8 at 14; Ex. 9 at 3, 4. But such statements are "generally understood by the special masters to mean *very* close in time – immediately, or at most within a day or two" especially in the SIRVA onset context. Motion at 8-9, citing *Flowers v. Secy' of Health & Hum. Servs.*, No. 20-285V, 2024 WL 2828211, at *11 (Fed. Cl. Spec. Mstr. May 8, 2024) (internal parentheticals andd citations omitted), *mot. for rev. den'd*, 173 Fed. Cl. 613 (2024).

Moreover, certain medical records are *even more specific,* and set forth timeframes that clearly fall within the Table-defined onset period. Motion at 9-11; *see e.g.*, Ex. 3 at 102 (January 10, 2024 primary care record describing pain "going on for about a month"); *id.* at 106 (January 24, 2024 primary care record of pain "going on for about 1.5 months"); Ex. 9 at 4 (April 3, 2024 PT record of pain starting the *day of vaccination*, and specifically on December 12, 2023).

No evidence suggests an *alternative*, off-Table timeframe. Motion at 10. And there is "no requirement that a Petitioner *seek* formal medical care within 48 hours of vaccination in order to establish SIRVA onset." *Id.* at 10-11 (internal citations omitted); *accord* Response at 6 n. 3 (Respondent's agreement that such prompt medical attention is not required by the Table).

For all of those reasons, Respondent's assessment that Petitioner's contemporaneous medical records are too "unclear" or "vague" to fulfill the Table SIRVA onset requirement is not persuasive. Response at 6-7 and n. 3. And this case lacks several of the deficiencies in Respondent's cited case. Response at 7, citing *Laird v. Sec'y of Health & Hum. Servs.*, No. 19-682V, 2023 WL 7104782 at *3-4 (Fed. Cl. Spec. Mstr. Aug. 30, 2023) (reflecting a primary care encounter one month post-vaccination but not documenting shoulder complaints; a five-month initial treatment delay regarding the shoulder; and one notation that the pain began "10 days after her flu shot" – specifically *contradicting* the Table SIRVA claim).

### IV.    Remaining Table SIRVA QAI Criteria and Statutory Requirements

Respondent concedes that Petitioner "has satisfied the other Table criteria for SIRVA." Response at 6, n. 2. I find that those requirements have been preponderantly satisfied. In particular, the December 12, 2023 vaccine was administered into her left deltoid muscle. Ex. 3 at 96. She developed new range of motion; her symptoms were limited to the left shoulder; and they were not explained by another condition or abnormality. *See e.g.*, Ex. 3 at 111-12; Ex. 4 at 9, 12; Ex. 8 at 13-14; Ex. 9 at 3-4; Ex. 11 at 6-8.

The statutory requirements applicable to all claims are also preponderantly established. Petitioner received a covered vaccine in the United States. Ex. 3 at 96. She experienced residual effects of the injury for more than six months. *See e.g.*, Ex. 3 at 111-12; Ex. 4 at 9, 12; Ex. 8 at 13-14; Ex. 9 at 3-4; Ex. 11 at 6-8. And she states that she has not received any type of award, judgment, or settlement for this injury. Ex. 1 at ¶ 34.

### Conclusion

Petitioner's Motion at ECF No. 18 is hereby **GRANTED.** Petitioner is entitled to Vaccine Program compensation for a Table SIRVA. A separate damages order will issue.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master